## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **PHILIP R. MCHUGH,** | ) | Case No. 25-CV-01468 |
| | ) | |
| Movant, | ) | *Related to: Philip R. McHugh v. Fifth Third* |
| | ) | *Bancorp, et al.*, No. 1:21-cv-00238 (S.D. |
| v. | ) | Ohio) |
| | ) | |
| **RHR INTERNATIONAL, LTD.** | ) | Judge Steven C. Seeger |
| | ) | |
| Respondent. | ) | Magistrate Judge Beth W. Jantz |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL OUT OF STATE DISCOVERY OR, IN THE ALTERNATIVE, TO TRANSFER

Movant, Philip R. McHugh, by and through his local counsel Sabreena El-Amin of CTM Legal Group and attorneys Peter A. Saba and Joshua M. Smith (*pro hac vice* applications pending) of SSP Law Co., L.P.A.,. and pursuant to Federal Rules of Civil Procedure 26, 34, and 45, hereby submits this Memorandum in Support of his Motion to Compel non-party, RHR International, Ltd. ("RHR"), to electronically produce the documents requested in the September 18, 2024 subpoena served upon RHR.

## I.      INTRODUCTION

Philip McHugh worked at Defendant Fifth Third Bank for 34 years, starting as a bank associate in October, 1986, and working his way up to Executive Vice President, becoming a member of the enterprise committee and reporting directly to the Bank's President, Chief Executive Officer, and Board Chairman at the time, Defendant Greg Carmichael. McHugh lead all 14 of the Bank's regions, along with Wealth & Asset Management, Business Banking, Community and Economic Development, and Corporate Communications. Despite his qualifications and significant responsibilities (many of which were those typically reserved for the bank's President),

McHugh (age 55) was denied a promotion to President and CEO in favor of a substantially younger candidate, Tim Spence (age 40), and shortly thereafter was constructively discharged from the bank.

Respondent RHR International's role in this promotion decision was to assess candidates for the President and CEO role in 2020, and present those findings to Fifth Third's board of directors in order to make a decision. Initially in March 2020, RHR was retained to assess three candidates—Spence, McHugh, and the Bank's CFO at the time, Tayfun Tuzun. However, in June 2020, Fifth Third directed that these assessments be limited to one candidate only—Spence—and to solely present the findings of that assessment to the board at its September 2020 board meeting. RHR conducted that assessment, presented a summary to the board of directors, and Spence was then promoted into the role one month later.

## II.    PRODCEDURAL HISTORY AND EXTRAJUDICIAL EFFORTS

### A.  Original and Supplemental Subpoenas to RHR

On April 1, 2022, Plaintiff served a subpoena on RHR for the production of documents related to its executive assessment planning work that it performed for Defendant Fifth Third. The categories of documents requested are provided in Exhibit A to the subpoena (the "Original RHR Subpoena"), but primarily seek documents and communications related to executive assessments performed on Timothy Spence, Phil McHugh, and any other candidates for the position of President or CEO of Fifth Third between January 1, 2016 to the present. (**Exhibit 1** to the Affidavit of Joshua M. Smith – April 1, 2022 Original RHR Subpoena).

On April 14, 2022, RHR's counsel sent a brief letter refusing to comply, claiming the Original RHR Subpoena was improper because it was outside the 100-mile geographic limit under Rule 45(c)(2), and making additional blanket objections that the subpoena "calls for the production

of information and documents that are privileged," and that the documents requested are "necessarily in the possession of named parties," "irrelevant to the named parties' claims and defenses," and "disproportionate to the needs of the case." (**Exhibit 2** to Smith Aff. – April 14, 2022 Corr. From Christopher Bloom to Plaintiff's Counsel).

Plaintiff's counsel responded on April 25, 2022, confirming that the requested documents could be produced via mail or e-mail as indicated in the Original RHR Subpoena, thus rendering the 100-mile geographic limitation inapplicable. (**Exhibit 3** to Smith Aff. – April 25, 2022 Corr. From Plaintiff's Counsel to Bloom). Plaintiff also responded that he was not aware of any applicable privileges to the documents, and that the documents are relevant and discoverable, given that Defendants claim to have made their decision to promote Spence over Plaintiff based in part upon the assessments performed by RHR. (*Id*.).

Following initial Board of Director and Bank executive employee depositions, on April 21, 2023, Plaintiff learned that RHR had also conducted an executive assessment of Defendant Carmichael immediately prior to his promotion to CEO in 2015. As a result, Plaintiff served a supplemental subpoena on RHR (the "Supplemental RHR Subpoena"), with a courtesy copy to RHR's counsel, which included requests for documents related to Carmichael's assessment. (**Exhibit 4** to Smith Aff. – April 21, 2023 Supplemental RHR Subpoena). On May 3, 2023, RHR's counsel responded, reiterating its blanket objections as to the 100-mile geographic limit, privacy/confidentiality concerns, relevance, and that the requested documents are in the parties' possession. (**Exhibit 5** to Smith Aff. – May 3, 2023 Corr. From Bloom to Plaintiff's Counsel). As to the privilege objections, RHR now claimed that the documents are subject to the therapist-patient privilege. (*Id*.). Yet again, RHR refused to produce a single document.

On January 30, 2024, in a further effort resolve these issues, Plaintiff sent another correspondence to RHR's counsel, confirming that Plaintiff would be seeking court enforcement of the Original and Supplemental RHR Subpoenas if documents were not produced. (**Exhibit 6** to Smith Aff. – January 30, 2024 Corr. From Plaintiff's Counsel to Bloom). When no response from RHR was received, Plaintiff then filed a Motion to Compel in the Southern District of Ohio on February 7, 2024 (the "Original Motion"). (*See* Doc. # 40, PAGEID # 2364-2378).

After significant briefing, on August 7, 2024, the Court ultimately dismissed the Original Motion[1] without prejudice to re-filing, determining as a threshold matter that the appropriate place of compliance for the Original and Supplemental RHR Subpoenas was Chicago—not Cincinnati. (*See* Doc. # 68, PAGEID # 3123-3129).

### B. Modified Subpoena to RHR

As a result of the Court's August 7, 2024 order, and in an attempt to resolve RHR's 100-mile geographic limit objections, Plaintiff served an updated subpoena to RHR requesting the same documents with production in Chicago (the "Modified RHR Subpoena"). (**Exhibit 7** to Smith Aff. – September 18, 2024 Modified RHR Subpoena). On October 4, 2024, RHR's counsel responded, again refusing to produce the requested documents and reiterating its blanket objections. (**Exhibit 8** to Smith Aff. – October 4, 2024 Corr. From Bloom to Plaintiff's Counsel).

### C. Extrajudicial Efforts related to Chicago Subpoena

On October 25, 2024, Plaintiff's counsel sent a letter to RHR's counsel inviting a phone call in an effort to resolve the ongoing discovery dispute. (**Exhibit 9** to Smith Aff. – October 25, 2024 Corr. From Plaintiff's Counsel to Bloom). Counsel conferred on November 5, 2024 via

---

[1] The Court's August 7, 2024 Order also denied RHR's Motion for Leave to File a Sur-Reply in Response to Plaintiff's Reply in Support of his Motion to Compel as moot.

conference call, and Plaintiff's counsel sent an e-mail re-capping the conference and identifying

the outstanding issues discussed, including the following:

- Plaintiff's counsel re-capped the request for production of any assessments of Plaintiff performed by RHR (*see* **Exhibit 7**, Requests 9-12), based upon prior discovery indicating that the original intentions of Fifth Third and RHR were to have Plaintiff and another executive assessed alongside Mr. Spence. Because RHR's counsel confirmed that their client would provide a verified response that no such responsive documents exist, this issue was resolved.

- Plaintiff's counsel re-iterated the request for all communications between RHR and Fifth Third in 2020 (the year the assessment was conducted) (*see* **Exhibit 7**, Requests 3, 7, 11, 13-15, 24), and voiced concerns regarding a gap in those communications between March 18, 2020 and June 8, 2020 based upon documents previously requested from Fifth Third which were not produced. Fifth Third's counsel responded and indicated it is not aware of any such documents, and RHR objected to searching its records or producing any materials given Fifth Third's response.

- Plaintiff's counsel re-iterated the request for draft and final assessments as to Mr. Spence in 2020. (*See* **Exhibit 7**, Requests 1-2). RHR's counsel agreed to circle back with their client regarding this request, but ultimately informed Plaintiff that RHR declined to search for or produce any non-final versions of the Spence assessments.

- Plaintiff's counsel also re-iterated the request for draft and final assessments as to Mr. Carmichael in 2015. (*See* **Exhibit 7**, Requests 18-20). In an attempt to alleviate RHR's confidentiality objections related to the requests, Plaintiff offered that such production could be done with confidential and/or attorney's eyes only designations under the terms of the parties' Stipulated Protective Order. However, RHR ignored Plaintiff's offer and instead informed Plaintiff that it would decline to search for, and thus decline to produce, the requested documents.

- Plaintiff's counsel similarly offered the use of confidential and/or attorney's eyes only designations under the parties' Stipulated Protective Order with respect to the requests for the underlying documents used/consulted in preparing RHR's assessments (Modified RHR Subpoena Requests 4, 16-17, and 28), but again, RHR flatly refused to produce the documents.

- Lastly, Plaintiff's counsel re-iterated his request for draft and final versions of the CEO Profiles prepared in connection with Mr. Spence's 2020 assessment and in connection with Mr. Carmichael's 2015 assessment. (*See* **Exhibit 7**, Requests 21-24). Plaintiff's counsel initially raised concern regarding potentially unproduced draft versions of the 2020 CEO Profile, Fifth Third's counsel responded, clarifying the production concerns, and this issue was resolved. However, with respect to the

request for the draft versions of the 2015 CEO Profile, RHR simply repeated its blanket relevance objection and refused to produce the requested documents.

(**Exhibit 10** to Smith Aff. – November 6, 2024 E-mail from Plaintiff's Counsel to RHR's Counsel;

**Exhibit 11** to Smith Aff. – November 20, 2024 E-mail from RHR's Counsel to Plaintiff's Counsel).

Through the use of extrajudicial efforts, Plaintiff has been able to narrow the scope of the subpoena to (1) underlying documents used/consulted in preparing the assessment of Tim Spence in 2020 (**Exhibit 7**, Requests 4, 16-17, 28); (2) documents relating to Greg Carmichael's assessment in 2015 (**Exhibit 7**, Requests 18-20); and (3) communications between RHR and Fifth Third between March 18, 2020 and June 24, 2020 (**Exhibit 7**, Requests 3, 7, 11, 13-15, 24). Unfortunately, RHR has maintained its objections as to these three categories of documents and has refused to produce even a single responsive document over the course of 2+ years.

## III. MOTION TO COMPEL PRODUCTION OF DOCUMENTS SUBPOENAED FROM RHR INTERNATIONAL, LTD.

Fed. R. Civ. P. 34(c) and 45 permit subpoenas to non-parties for the production of documents relevant to the litigation. *See* Fed. R. Civ. P. 34(c)("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). "[T]he scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011); *See also FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 19 CV 50122, 2021 U.S. Dist. LEXIS 221225, at *4 (N.D. Ill. Aug. 10, 2021)("The limits of production under a subpoena are essentially the same as the scope of discovery generally under Fed. R. Civ. P. 26, which provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); Fed. R. Civ. P. 45 advisory committee notes to 1991

amendment ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34.").

Fed. R. Civ. P. 26(b) provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998); *See also Ziemack v. Centel Corp.*, No. 92 C 3551, 2995 U.S. Dist. LEXIS 18192, at *2 (N.D. Ill. Dec. 6, 1995)("The scope of discovery should be broad in order to aid the search for the truth. The Federal Rules of Civil Procedure allow discovery regarding any non-privileged matter that is relevant to the subject matter of the action."); Fed. R. Civ. P. 26(b)(1)("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Since all of RHR's objections have previously been briefed, for the Court's convenience and to avoid unnecessary repetition of the issues, Plaintiff has attached the Original Motion to Compel briefings filed in the underlying lawsuit, *Philip R. McHugh v. Fifth Third Bancorp, et al.*, No. 1:21-cv-00238 (S.D. Ohio), in the Southern District of Ohio. (*See* Plaintiff's Motion to Compel, Doc. # 40, PAGEID # 2364-2378; RHR's Response to Motion to Compel, Doc. # 59, PAGEID # 2517-2535[2]; Plaintiff's Reply in Support of Motion to Compel, Doc. # 61, PAGEID # 2545-2556[3]; RHR's Motion for Leave to File Sur-Reply in Response to Plaintiff's Reply in Support of Motion to Compel, Doc. # 62, PAGEID # 2583-2585[4]; RHR's Memorandum in Support of Motion for Leave to File Sur-Reply, Doc. # 63, PAGEID # 2591-2593; Plaintiff's Memorandum in Opposition to RHR's Motion for Leave to File Sur-Reply, Doc. # 64, PAGEID # 2594-2601;

---

[2] *See also* Exhibit 1 to RHR's Response to Motion to Compel, Doc. # 59-1, PAGEID # 2537-2541.
[3] *See also* Affidavit of Joshua M. Smith, Doc. 61-1, PAGEID # 2557-2582.
[4] *See also* Exhibit A to RHR's Motion for Leave to File Sur-Reply – Proposed Sur-Reply in Opposition to Plaintiff's Motion to Compel, Doc. # 62-1, PAGEID # 2586-2590.

RHR's Reply Memorandum in Support of Motion for Leave to File Sur-Reply , Doc. # 65, PAGEID # 2602-2608).

Since the filing of that Original Motion, and as a result of Plaintiff's further extrajudicial efforts, Plaintiff has been able to narrow the scope of the subpoena to three outstanding categories of documents: (1) the documents underlying RHR's assessment of Spence; (2) documents related to the 2015 Carmichael assessment; and (3) any communications between RHR and Fifth Third between March 18, 2020 and June 24, 2020. RHR has objected to the production of such documents, and those objections are addressed below.

**A.  Documents underlying 2020 Spence Assessment**

RHR has repeatedly objected to the production of these underlying documents that were used in preparing the 2020 Spence Assessment, on the basis that such documents are generally "privileged, proprietary, and confidential," and contain "sensitive" and "personal" information of individuals who are not parties to this case. RHR has further objected to the production of these documents on the basis that the documents are irrelevant as these materials were not shared the Bank's Board of Directors.

Neither objection is sufficient to serve as a basis for RHR to deny production of the requested documents. None of the underlying documents used or consulted in preparing Spence's executive assessment (i.e., underlying data, scoring/analysis of psychometric tools used, problem-solving-approach assessments, leadership-style assessments, benchmarked experience analyses, 360 feedback interviews, behavioral interviews, etc.) are protected by any recognized privilege from discovery, and, the general "proprietary" or "confidential" nature of the documents as espoused by a producing party is simply not a valid basis for prohibiting disclosure entirely. (*Louisma v. Automated Fin., LLC*, No. 11 C 2104, 2011 U.S. Dist. LEXIS 126120, at *5 (N.D. Ill.

Nov. 1, 2011 ("A general assertion of privilege or protection is not enough to quash a subpoena in toto."); *Cardinal Square, LLC v. Qbe Specialty Ins. Co.*, No. 1:23-cv-00114-JRS-MJD, 2023 U.S. Dist. LEXIS 203996, at *9 (S.D. Ind. Sep. 19, 2023)("While Rule 45(d)(3)(B)(i) permits the quashing of a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information," the Movants' bare assertion that such information is at issue is not sufficient to invoke that provision.")). This is particularly true where a Stipulated Protective Order is in place to protect RHR or Fifth Third from such public disclosure. Plaintiff has made it abundantly clear to RHR that he would agree to the production of these documents under either a confidential and/or attorney's eyes only designation under the Stipulated Protective Order.

RHR's relevance objection is similarly baseless. The fact is, Fifth Third has asserted that it relied upon RHR's assessment in promoting Spence to President and CEO. The underlying documents used or consulted in preparing that assessment are, therefore, subject to discovery for multiple reasons. This includes for purposes of verifying the accuracy of such an assessment, and to compare Spence's qualifications to those of an older, long-tenured executive whom Fifth Third claims it never considered.

### B. Documents related to 2015 Carmichael Assessment

As more thoroughly discussed in prior briefing,[5] RHR claims that the 2015 Carmichael assessment is irrelevant because it was prepared "five years earlier," pursuant to a "different request for services" and "in response to a different set of criterion."

The reality, however, is that the "services" provided by RHR in 2015 and 2020 were the same – assess potential candidates for CEO of Fifth Third Bank, and report back its findings to the

---

[5] See RHR's Motion for Leave to File Sur-Reply (Doc # 62) and subsequent memoranda (Doc # 63-65).

Bank. (Gregory Carmichael Deposition 295:21-24 ("[P]art of the due diligence for the board would be to do exactly what they did with me. [Marsha Williams] referenced the – [the Board] thought the process that I went through was excellent. [The Board] really liked the firm that did it."); *Id*. at 305:19-21 ("The board wanted to use the firm RHR, because they were very pleased with the process that they went through prior with me in 2015."); Eileen Mallesch Deposition 86:11-13 ("[RHR was] the external consultant to provide an external view of what was the candidate slate [for CEO]."); Nicholas Akins Deposition 88:23-90:22 (In both 2015 and 2020, Fifth Third retained RHR to assess potential candidates for the CEO position and RHR presented its findings to Fifth Third's Board of Directors)). Additionally, evidence shows that the 2015 and 2020 CEO Profiles contain identical "essential leadership behavior" criterion. RHR's mischaracterizations of the two CEO assessment processes further highlights the relevancy of the 2015 assessment documents for purposes of Plaintiff's claims, especially if the 2020 assessment is determined to have deviated from the typical CEO succession processes.

RHR also appears to assert that because the Carmichael assessment was 5 years earlier, and its "business terms" with Fifth Third only permit Fifth Third to utilize an assessment for 3 years. However, RHR's unilaterally determined "business terms" do not dictate what is or is not relevant when it comes to discovery sought as part of a litigation. Just because RHR's "business terms" state that an assessment of a potential candidate may not be used more than three years after delivery does not mean such assessments or supporting documentation is not discoverable in litigation. Thus, this objection is irrelevant as it is based solely on RHR's business preferences, not the law.

**C. Communications between RHR and Fifth Third Between March 18, 2020 and June 24, 2020**

Through Plaintiff's extrajudicial efforts, he has narrowed his request for RHR/Fifth Third communications to a roughly three month gap in which no communications have been produced. Plaintiff has requested these documents from the Bank on numerous occasions, to which Fifth Third's counsel has simply stated no such communications exist. However, other discovery, including text messages, show that meetings and/or phone conferences occurred between RHR and Fifth Third in these months. This includes texts between Fifth Third's Chief Human Resources Officer, Bob Shaffer, and Defendant Carmichael, in which they discuss monthly calls with RHR's consultant. (*See* **Exhibit 12** to Smith Aff. – April 3, 2020 Text Messages between Shaffer and Carmichael; **Exhibit 13** to Smith Aff. – May 4, 2020 Text Messages between Shaffer and Carmichael). It is curious that such monthly meetings occurred, yet there are zero communications or documents from RHR to Fifth Third about such meetings.

Despite Plaintiff's good-faith efforts to work with RHR, RHR has not only refused to produce any responsive documents, but it has also informed Plaintiff that it will not even conduct a search for this limited time period because it feels it should not be asked to produce these materials given Fifth Third's counsel's blanket assertions that no documents exist. Despite RHR's claims otherwise, this limited request presents minimal to no burden on RHR to comply. All Plaintiff is requesting at this time is for RHR to search its records to confirm whether there were any communications between RHR and Fifth Third between March 2020 and June 2020, and if so, to produce those communications. Compelling such a search is reasonable and hardly a burden to RHR.

IV.    **CONCLUSION**

Plaintiff is seeking to move discovery forward in this case, including by obtaining relevant documents he has requested from RHR over the last two years. RHR has refused to comply and

has refused to cooperate with Plaintiff's repeated extrajudicial efforts to resolve their objections. Due to the foregoing reasons, Plaintiff respectfully requests that this Court exercise its authority under Rule 45 to compel production, or in the alternative, to transfer the Motion to the Southern District of Ohio to be heard in the underlying lawsuit styled *Philip R. McHugh v. Fifth Third Bancorp, et al.*, No. 1:21-cv-00238 (S.D. Ohio) should this Court deem necessary.

WHEREFORE, pursuant to the forgoing and supporting exhibits, Movant's Motion to Compel, and the documents attached thereto, Movant respectfully requests that this Court enter an order granting his Motion to Compel, compelling RHR to produce of the above-discussed documents within seven days, granting Movant his reasonable costs and fees associated with presenting this motion, and for such other relief as the Court deems appropriate.

DATED: February 14, 2025                    Respectfully Submitted,

**PHILIP R. MCHUGH**

*/s/ Sabreena El-Amin*_____
Sabreena El-Amin
CTM LEGAL GROUP
77 W. Washington Street, Suite 2120
Chicago, IL 60602
(312) 818-6700
sel-amin@ctmlegalgroup.com

*/s/ Peter A. Saba*_____ _____
Peter A. Saba, Esq. (*pro hac vice* application pending)
Joshua M. Smith, Esq. (*pro hac vice* application pending)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
jms@sspfirm.com

**Co-Counsel for Plaintiff Philip R. McHugh**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing Motion was served on all counsel of record this 14th day of February, 2025 via the Court's CM/ECF system and that, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), notice and a copy of the Motion was provided to RHR International, Ltd., via ordinary and electronic mail.

*/s/ Sabreena El-Amin*_____
Sabreena El-Amin