

Joshua M. Smith, Esq.  
Email: jms@sspfirm.com

Phone: (513) 533-6715  
Fax: (513) 533-2999

October 25, 2024

**VIA ELECTRONIC MAIL**
Christopher A. Bloom (christopher.bloom@klgates.com)
K&L Gates LLP
70 W. Madison Street, Suite 3100
Chicago, IL 60602

      Re:    Philip McHugh v. Fifth Third Bancorp, et al.
                Compliance with September 17, 2024 Subpoena

Mr. Bloom:

      This letter responds to your October 4, 2024 objections to the September 17, 2024 subpoena ("2024 Subpoena") served on your client RHR International LLP ("RHR") in Chicago. As you acknowledge in your letter, the subpoena is for the same information we have been seeking from RHR since 2022, to which you have repeatedly lodged blanket objections and refused to produce one responsive document. We are responding in another extrajudicial attempt to resolve this discovery dispute, as we did on April 25, 2022 in response to your first set of blanket objections, on April 18, 2023 in conjunction with a supplemental subpoena, and on January 30, 2024, in which we invited you to have a discussion regarding subpoena compliance.

      First, your letter inaccurately claims that in 2020, Fifth Third engaged RHR to perform an assessment of *a single individual* (Tim Spence). The reality is that RHR was originally engaged to perform an assessment of three executive candidates—Tim Spence, Phil McHugh, and Tayfun Tuzun. This is confirmed via an e-mail on March 6, 2020 from Bob Shaffer (Fifth Third's CHRO) to RHR lead consultant Guy Beaudin, in which Mr. Shaffer attached the biographies and one-pagers of all three candidates. *See* FIFTHTHIRD-MCHUGH-005951-5957. Mr. Beaudin responded on March 11, 2020 with the CEO profile used in 2015, and indicated he would follow-up with a proposal in a day or two. *See* FIFTHTHIRD-MCHUGH-005705-005711. The following day, Beaudin e-mailed Shaffer with an "outline for the work with timelines, etc." and was "happy to get on a call Monday either 930 or 1030 to answer any questions." *See* FIFTHTHIRD-MCHUGH005704. It was not until two months later that the assessment was reduced to one candidate only, after Mr. Shaffer had a follow-up discussion with Mr. Beaudin, and Mr. Beaudin confirmed that he "agreed" with Mr. Shaffer and Mr. Carmichael's request to assess only one candidate. *See* FIFTHTHIRD-MCHUGH-006414 ("Guy agrees that if Tim is 'the' successor don't add Tayfun and Phil formerly [sic]."). From there, Mr. Beaudin sent a "rewritten [] proposal to reflect our discussion today" and "reduced the fee for Phase 1 and Phase 4 in half to reflect the reduced complexity of the assignment." *See* FIFTHTHIRD-MCHUGH-005686.

Exhibit 9

Christopher A. Bloom
*McHugh v. Fifth Third Bancorp, et al.*
October 25, 2024
Page 2

You assert that RHR did not perform any assessment of Phil McHugh, notwithstanding the initial indication that it was being hired to do so. If that is the case, please have your client certify that no such responsive documents exist. Regardless, to the extent there is any correspondence, partial assessments, or any other work performed with respect to an anticipated assessment of Phil McHugh, those documents are relevant and must be produced.

Second, you claim that all information relevant to the litigation has been previously produced by Fifth Third Bank through "documents and deposition testimony." This is demonstrably false. By way of example, in the motion to compel briefing in Cincinnati, RHR produced a relevant document as an exhibit to its opposition (the RHR-Fifth Third Business Terms). That document had never been previously produced by Fifth Third, despite repeated requests for it.

Beyond this example, other subpoenaed documents have not been produced, including but not limited to draft assessments of other Fifth Third Executives, correspondence regarding those assessments, documents consulted or used in preparation of assessments (including as to Spence and other executives), correspondence or documents related to succession planning or executive development at Fifth Third, documents referring to questions and answers provided by Tim Spence or Greg Carmichael during their assessment, draft and final versions of the CEO profile utilized with respect to Greg Carmichael's assessment, documents relating to the board summary provided to Fifth Third's Board from RHR regarding Tim Spence (e.g., notes from interviews, etc.), all invoices for services provided, and all completed surveys/assessments relating to Spence or Carmichael, including Watson-Glaser, Raven's, or Hogan Insight Reports. Most if not all of these documents would be in the exclusive possession of RHR.

Third, you claim that the "other materials sought" such as "underlying data or documents relating to the preparation of Mr. Spence's assessment" are not relevant to the claims or defenses because, according to you, they did not bear on Fifth Third Bank's decision to promote Mr. Spence.

This argument is incorrect too, and misses the point. Fifth Third claims to have relied in part on RHR's assessment report of Tim Spence as a factor in promoting him. At the same time, there is evidence that Fifth Third executives—including Greg Carmichael and Bob Shaffer—were heavily involved in the preparation, review, and editing of both the CEO Profile, Mr. Spence's draft assessment, the selection of the individuals to be interviewed by RHR, and the decision to remove the two older executives (McHugh and Tuzun) from the evaluation process before any information was ever presented to the Board. Such influence over RHR's assessment is relevant to the claims in this case, including failure to promote. *See Bonner v. Scope Servs.,* 2015 U.S. Dist. LEXIS 94748 at *22 (S.D. Ohio 2015), citing *Staub v. Proctor Hosp.,* 562 U.S. 411, 422, 131 S. Ct. 1186, 179 L. Ed.2d 144 (2011)("[A]n employer may be liable under the cat's paw theory for an intermediate employee's discriminatory motive when the employer takes into account facts provided by the biased supervisor in determining whether to take a particular adverse action when that biased supervisor's action was intended to cause the adverse employment action."); *Bledsoe v. TVA Bd. Of Dirs.,* 42 F.4th 568, 582 (6th Cir. 2022)("We have previously applied the cat's paw theory to hold an employer liable when a biased employee influenced a committee's employment action.").

Christopher A. Bloom
*McHugh v. Fifth Third Bancorp, et al.*
October 25, 2024
Page 3

Moreover, items that were *not* presented to the Board as the final decisionmaker are just as important as items that were, given the influence that Mr. Carmichael and Mr. Shaffer asserted and the role they played in the process, and the resulting liability from it. By way of example, if interview responses were not shared with the Board, or if other assessments critical of Spence were shielded from the Board, such information would remain relevant despite the Board not being privy to it (indeed, it is all the more relevant *because* the Board was not made aware of it). Finally, such information withheld from the Board is also relevant to demonstrate irregularities in the assessment process and/or pre-selection, which can serve as relevant pretext evidence. *See Kimble v. Wasylyshyn,* 439 Fed. Appx. 492, 497 (6th Cir. 2011)("Although an employer has great flexibility in choosing a management level employee, evidence of preselection (or, presumably, as in this case, 'pre-rejection') operates to discredit the employer's proffered explanation for its employment decision, and is relevant evidence of the employer's motivation."); *Fijalkowski v. Belmont Cty. Bd. Of Comm'rs,* 2021 U.S. Dist. LEXIS 92840, at *19 (S.D. Ohio 2021)("The Sixth circuit has found that evidence of irregularities in the application and selection process can raise a genuine issue of pretext when combined with other indicators of discriminatory motivations…[a] plaintiff presents an especially strong irregularity argument when she shows how the irregularities prejudiced her in the selection process or indicate any dishonesty or bad faith on the part of the Defendants.").

Lastly, you again reference vague "legal and ethical obligations" to keep the assessment information confidential. Again, there is no applicable psychotherapist-patient privilege at issue in this case for the same reasons we've stated to you before and in the prior motion to compel briefing. Further, the alleged "confidential" nature of any interviews conducted is also not a basis to refuse production, particularly where there is an adequate Stipulated Protective Order in place to protect the confidentiality of such information.

Given RHR's continued refusal to produce any documents whatsoever, Plaintiff will unfortunately need to again seek Court intervention. As directed by Judge Barrett, this intervention will be sought from the Northern District of Illinois. However, before doing so, we would like to schedule a telephone conference in a further effort to work through and resolve these issues. In that vein, please confirm your availability for such a call next week (October 28, 2024 – November 1, 2024). If we do not hear back from you, we will have no choice but to proceed forward with Court intervention. Thank you.

          Sincerely,

          SSP LAW CO., L.P.A.

          Joshua M. Smith, Esq.

Cc:    Peter A. Saba
        John J. McHugh, III
        Sabreena El-Amin