# EXHIBIT B

| | | |
|---|---|---|
| PHILIP R. MCHUGH, | ) | Case No. 25-cv-01468 |
| | ) | |
| Movant, | ) | Honorable Steven C. Seeger |
| | ) | |
| v. | ) | Magistrate Judge Beth W. Jantz |
| | ) | |
| RHR INTERNATIONAL LLP, | ) | *Related to Philip R. McHugh v. Fifth Third* |
| | ) | *Bancorp, et al.*, No. 1:21-cv-00238 (S.D.* |
| Respondent. | ) | Ohio) |
| | ) | |

**RESPONDENT RHR INTERNATIONAL LLP'S RESPONSE TO
PLAINTIFF'S MOTION TO COMPEL OUT OF STATE DISCOVERY
OR, IN THE ALTERNATIVE, TO TRANSFER**

Non-party RHR International LLP ("RHR"), a Delaware limited liability partnership, by and through its undersigned counsel, in response to Plaintiff Philip R. McHugh's Motion to Compel Out of State Discovery Or, in the Alternative, to Transfer and Memorandum in Support thereof (respectively, the "Motion" and "Pl's Memo"), states as follows:

## I.    INTRODUCTION

This proceeding arises from an action pending in the Southern District of Ohio, filed by Plaintiff Philip McHugh against Defendants Fifth Third Bancorp., Fifth Third Bank, and its former President and Chief Executive Officer ("CEO"), Gregory Carmichael (hereinafter collectively referred to as "Fifth Third" or the "Bank"). McHugh alleges that the Bank wrongfully denied him a promotion due to his age when it promoted a younger employee, Timothy Spence, to succeed Carmichael as CEO at the Bank. RHR is not a party to that case, but it has been the target of McHugh's abusive discovery tactics for the past three years, which now include two motions to compel.

RHR is a consulting firm composed of behavioral scientists and psychologists. Among other services, RHR provides companies with executive leadership and development services for

RHR is a consulting firm composed of behavioral scientists and psychologists. Among other services, RHR provides companies with executive leadership and development services for senior personnel and management. In 2020—after Fifth Third and its Board of Directors (the "Board") identified Spence as the candidate for the Bank's next CEO—the Bank engaged RHR to provide these services with respect to Spence. As part of its engagement, RHR provided an Executive Assessment and Development Report, which detailed Spence's leadership strengths and identified opportunities for development (the "RHR Report"). These findings were presented to Fifth Third's Board of Directors. Both the Board presentation and the RHR Report were produced to McHugh in connection with this litigation, along with the other materials prepared by RHR that were shared with the Bank or the Board in connection with RHR's engagement.[1]

RHR was not engaged to assess McHugh or any other candidate, and no information about McHugh was included in the RHR Report. *See* Pl's Memo at 2 (acknowledging that "in June 2020, Fifth Third directed that these assessments be limited to one candidate only – Spence . . . .").[2]

McHugh previously moved to compel RHR to produce the documents sought by the subpoena in the District Court for the Southern District of Ohio, where the action is pending. That motion was denied on August 7, 2024, after the Court found that the motion should have been brought in this Court, the home District of RHR.[3] The current motion seeks the production of three

---

[1] Despite this, the subpoenas and McHugh's first motion to compel, as filed in the underlying case in the Southern District of Ohio, demanded the production of 28 categories of documents, including materials that McHugh had reason to know did not exist (RHR's "assessment of McHugh") and materials he had already received from Fifth Third.

[2] No other individual was being considered. Ex. 1 (Ex. 3 to Affidavit of Joshua M. Smith, Esq. in support of Plaintiff's Motion to Compel Production of Documents Subpoenaed from RHR International, LTD, Case No. 1:21-cv-00238 (S.D. Ohio *filed* Feb. 7, 2024) (Dkt. No. 40) (the "First Motion to Compel")).

[3] This order is sufficient grounds to deny McHugh's alternative request to transfer the proceeding to the District Court for the Southern District of Ohio.

categories of documents: (1) documents "underlying" RHR's assessment of Spence, such as RHR's internal notes from interviews and the raw scoring data of psychometric tools utilized in assessing Spence; (2) documents relating to RHR's 2015 assessment of Spence's predecessor, Gregory Carmichael; and (3) "any communications between RHR and Fifth Third between March 18, 2020 and June 24, 2020." Pl's Memo at 8.[4]

The motion should be denied in full on multiple grounds. The documents sought are not relevant to McHugh's age discrimination claim. In fact, because these internal RHR materials were never provided to or shared with the Bank, they could not be the basis of any Bank decision. Further, the materials contain the private, personal information of Spence and his coworkers at Fifth Third, to whom promises of confidentiality were made to ensure their participation and candor. And the requests—even limited as they now are—in total impose an undue burden on non-party RHR and invade the privacy of the participants. The Motion should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   RHR International LLP

Founded in 1945, RHR was the first company to apply behavioral science to organizational leadership.[5] For 80 years, RHR has used its knowledge of human behavior to improve leader effectiveness and organizational performance. *Id.* Among other services, RHR provides companies with executive leadership and development services for senior personnel and management.[6]

---

[4] RHR does not agree that any of these materials are the appropriate subject of discovery. However, because the communications that comprise Category 3 do not contain personal, sensitive information of any non-party, and in a further effort to reduce the issues before the Court, RHR has agreed to produce the communications exchanged between Fifth Third and RHR from March 18, 2020 through June 24, 2020.

[5] *See About Us*, RHR INTERNATIONAL LLP, https://rhrinternational.com/about-us/#mission (last visited April 14, 2025).

[6] *Assessment*, RHR INTERNATIONAL LLP, https://rhrinternational.com/leadership-assessment/ (last visited April 14, 2025).

### B.    RHR's Assessment of Spence

After Fifth Third identified Spence as its candidate for the Bank's next CEO, it engaged RHR to conduct an executive leadership assessment of Spence. *See* Ex. 2 to the Affidavit of Joshua M. Smith, Esq. in Support of the First Motion to Compel (excerpts from deposition transcript of former Chairman of the Board and CEO, Gregory Carmichael), attached hereto as Ex. 2. Although multiple executes were initially considered,  ultimately, RHR was only engaged to assess Spence. *See* Ex. 1 at 300:17-21 (excerpts from deposition of Fifth Third's former CEO and Board Chairman, Greg Carmichael: ███████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ )); *see also* Ex. 3 (Ex. 6 to the Affidavit of Joshua M. Smith, Esq. in support of the First Motion to Compel (email from B. Shaffer to G. Carmichael dated June 8, 2020) (█████████████████████████████████████ )).

As part of its engagement, RHR created a "CEO Profile" in collaboration with Fifth Third personnel. Ex. 5 at 3. This profile was used by RHR to ensure that it had a full understanding of the "cultural nuances, leadership behaviors, and skills" required of Fifth Third's next President and CEO. *Id.* Draft and final versions of the CEO Profile were produced by the Bank.

Prior to performing its assessment, RHR assured Spence that it would respect the privacy of his personal information and directed Spence to review and acknowledge RHR's Privacy Policy. See Ex. 4 (email from RHR to Spence dated June 22, 2020 which provided a link to the then-current version of RHR's Privacy Policy). RHR's Privacy Policy expressly states that information provided to RHR in connection with questionnaires and assessments will only be used for specific, legitimate purposes (*e.g.*, providing services, supporting clients, improving its website, and conducting assessments) and that RHR will not disclose responses to anyone other than those authorized in the Privacy Policy (*e.g.*, "The client with whom we share your responses may be

your employer or prospective employer. Except with respect to the provision of consulting and advisory service, the information you provide will not be sold or rented to third parties.").[7] These obligations are legally binding on RHR. *See F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

RHR's assessment process uses a rigorous, objective approach that includes multiple sources of data regarding the candidate. It includes a "360 review" (a process in which RHR interviewed a variety of personnel at Fifth Third, including Spence's peers and direct reports) and a three-hour, in-person, structured, behavioral interview of Spence himself. Ex. 5 at 3. The interviews were conducted with the guarantee that ████████████████████████████████ ███████████████████████████████████████████████████████████████ FIFTHTHIRD-MCHUGH-005391 at 005393, attached hereto as Ex. 6 (draft email to interviewees prepared by RHR); *see also* Group. Ex. 7 (as-sent emails to interviewees). In order to obtain accurate feedback, it is imperative that the interviewees, which included Spence's direct reports, be guaranteed anonymity. And, indeed, RHR's policy is to include in its deliverables only aggregated information that can be attributed to three or more sources. RHR also performed a career and track record benchmarking analysis of Spence's experience. Ex. 5 at 3.

The assessment also required Spence to respond to three widely-recognized online psychometric and behavioral science instruments: the Hogan Insight Series Assessment Test,[8] which is a psychometric assessment of an individual's strengths, performance risks, and core

---

[7] *Privacy Policy*, RHR INTERNATIONAL LLP, www.rhrinternational.com/privacy-policy/ (last visited April 14, 2025).

[8] *Insight Series*, HOGAN ASSESSMENTS, https://www.hoganassessments.com/products/insight-series/ (last visited on April 14, 2025).

values to help emerging managers develop strategic self-awareness; the Watson-Glaser test,[9] which evaluates an individual's critical thinking skills and evaluates a person's ability to identify assumptions, dissect arguments, and draw conclusions; and Raven's Advanced Progressive Matrices,[10] a nonverbal test used in measuring abstract reasoning and regarded as a non-verbal estimate of fluid intelligence. These diagnostic tools pose a standard set of questions to the individual which are analyzed and scored by a third party. RHR did not share the results or Spence's responses to the test questions with Fifth Third or anyone else, including Spence.

After completing the assessment, RHR prepared two documents for Fifth Third's management: the RHR Report, which analyzed these inputs against the CEO Profile and high-level, anonymized results from the stakeholder interviews that RHR performed (*see* Ex. 8) and a "Board Summary" of that report that was presented to the Board of Directors (the "Deliverables"). (Ex. 9). As noted above, these documents have already been produced in this litigation.

The Deliverables (Exhibits 8 and 9) include only aggregated, non-detailed summaries of the test results and do not attribute any comment to any interviewee. Nor did RHR share its notes, or any other underlying materials, regarding its assessment with the Bank. This is by design and in accordance with applicable ethical standards. Due to the sensitive nature of psychological assessments and interviews, anonymity is required in order to protect the interviewees and the integrity of the assessment. Consistent with these principles, the agreement between Fifth Third

---

[9] *Watson-Glaser Critical Thinking Appraisal III*, PEARSON, https://www.pearson.com/asia/industry/human-resources/watson-glaser.html (last visited on April 14, 2025).

[10] *All Professional Assessments by Acronym*, PEARSON, https://www.pearsonassessments.com/professional-assessments/products/products-by-acronym.html (click "APM (Raven's Advanced Progressive Matrices)" hyperlink) (last visited April 14, 2025).

and RHR anticipated and acknowledged that there would be information that RHR collected in connection with its assessments that it *would not* share with the Company:

> The Company [Fifth Third] acknowledges that RHR may not, as a matter of law or professional responsibility, be able to disclose certain Personal Information to the Company. RHR shall not be obligated to provide such information to the Company or include such information in any Deliverable.

*See* Ex. 10 at ¶ 5 (the Business Terms agreement entered into between RHR and Fifth Third). The Business Terms also provide, in paragraph 2, that confidential information obtained by RHR "may not be disclosed except in compliance with applicable laws, regulations and industry or professional standards," and that RHR "shall not be obligated to provide . . . [personal information] . . . to the Company or include such information in any Deliverable." *Id.* at ¶¶ 2, 5.

### C. The Subpoenas and Proceedings in the Southern District of Ohio

The instant subpoena is the third served on RHR by McHugh. Two prior subpoenas, both of which were the subject of the First Motion to Compel, were served on April 1, 2022 and a *year* later, on April 21, 2023. *See* Dkt. Nos. 4-2, 4-5 (Exhibits 1 & 4, respectively, to the Declaration of Joshua M. Smith, Esq., Dkt. No. 4 ("Smith Decl."), submitted in support of the instant motion). McHugh's counsel filed a motion to compel RHR to produce the documents sought in the two subpoenas on February 7, 2024, nearly two years after issuing its first subpoena. The motion was filed in the Southern District of Ohio rather than the Northern District of Illinois, in which RHR is located. Following briefing, on August 7, 2024 the Southern District of Ohio concluded that it "lacks authority to rule on the merits" of McHugh's motion to compel. Ex. 11. McHugh then served the third subpoena on RHR, requesting the same documents it previously sought. *See* Dkt. No. 1-1. Months later, following conferral, McHugh's counsel filed the motion to compel now pending before this Court.

## III.    LEGAL STANDARD

As McHugh concedes, Rule 45 limits discovery to "non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Pl's Memo at 6 (citing *FireBlok IP Holdings, LLC v. Hilti, Inc.,* No. 19 CV 50122, 2021 U.S Dist. LEXIS 221225, at *4 (N.D. Ill. Aug. 10, 2021)). Rule 45 specifically authorizes a Court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter" or which "subjects a person to undue burden," FED. R. CIV. P. 45(d)(3)(A)(i), (iv), and courts are particularly sensitive to the burdens of discovery placed on non-parties. *See, e.g., Cruz v. Guevara*, Case No.23 C 4268, 2024 WL 4449944, at *5 (N.D. Ill. Oct. 9, 2024) ("courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs"). The party who moves to compel "bear[s] the burden of persuasion on [its] motion." *Whitlow v. Martin*, No. 04–3211, 2008 WL 2414830, at *4 (C.D. Ill. June 12, 2008);  *see also Ty, Inc. v. Salvino, Inc.,* No. 98 C 6318, 1999 WL 162774, at *1 (N.D. Ill. Mar. 16, 1999) (same).

## IV.    ARGUMENT

Though the instant motion to compel is more limited than his First Motion to Compel, McHugh's requests are no more reasonable. McHugh's remaining demands seek: (1) the documents underlying RHR's assessment of Spence and (2) documents related to an assessment performed by RHR of Spence's predecessor in 2015. Only relevant and non-privileged materials are subject to discovery, and then only where the discovery is not unduly burdensome. *Jones v. Nat'l Council of Young Men's Christian Assocs. of U.S.*, No. 09 C 6437, 2011 WL 1312162 at *2 (N.D. Ill. Mar. 31, 2011). McHugh's demands fail to meet this standard, and the Court should deny McHugh's Motion for each of the following reasons: the documents sought are not relevant to McHugh's age discrimination claim; the materials contain the private, personal information of

third parties to whom RHR owes duties of privacy and confidentiality; and the requests—even limited as they now are—in total impose an undue burden on a non-party.

### A. McHugh Seeks Materials Not Relevant to the Dispute

Under Rule 26, the discovery sought must be relevant, and relevance "focuses on the claims and defenses in the case, not its general subject matter." *Motorola Solutions, Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). To succeed on his age discrimination claim against Fifth Third, McHugh "has 'the burden of persuasion to demonstrate by a preponderance of the evidence . . . that age was the but-for cause of the challenged employer decision.'" *Carter v. City of Troy, Ohio*, 714 F. Supp. 3d 941, 952 (S.D. Ohio 2024) (quoting *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2007)).[11] The materials McHugh seeks were never produced or otherwise reviewed by the Bank and do not have any relevance to his alleged claim of age discrimination. RHR's documents, those that have not been already produced in this litigation, are not probative of this inquiry for several reasons.

*First*, all of RHR's materials that were shared with the Bank, including all materials provided to the Board, were produced long ago. These are the only RHR materials that could have been a part of the Board's decision-making process. These materials include the draft and final versions of RHR's proposals, the CEO Profile, the RHR Report, and the presentation to the Board. The materials that have not been produced (*i.e.*, internal preliminary drafts of the RHR Report,[12] RHR's notes from interviews of the candidate and his colleagues, and scoring from the psychometric tools) shed no light on the Board's process or deliberations because the Board never

---

[11] We apply the Sixth Circuit's case law on this point because the case in controversy between McHugh and Fifth Third will be decided within that jurisdiction.

[12] These versions of the RHR Report (that were not shared with the Bank) were incomplete and had not yet undergone RHR's internal quality assurance processes.

had access to and could not consider such materials. Here, the only relevant information at issue is what was actually shared with Fifth Third by RHR and thus could have been used by the Board in its decision-making.

*Second*, these materials are not relevant to McHugh's claim because they do not address the qualifications of McHugh at all. RHR did not evaluate candidates other than Spence. Pl's. Memo at 2 ("Fifth Third directed that these assessments be limited to one candidate only—Spence . . . ."). Nevertheless, McHugh claims that he needs these documents to "compare Spence's qualifications to those of an older, long-tenured executive . . . ." Pl's Memo at 9. There is no comparison that can be made between Spence and McHugh from RHR's notes, non-final drafts of the Deliverables, or the raw data from the psychometric tests of Spence because McHugh wasn't assessed and RHR has no comparable data.

McHugh's demands for documents relating to RHR's assessment of Carmichael is even further afield. In 2020, Carmichael was *not* a candidate for the position McHugh claims he was wrongly denied. While RHR performed an assessment of Carmichael using a similar process in 2015, it was performed in connection with a separate search at a different time, under different circumstances, and, most importantly, by a completely different Board of Directors. The needs, priorities, and goals of Fifth Third in 2015 were different from its needs in mid-2020, three months into a global pandemic. But even if that were not the case, the fact is that the assessment of Carmichael and data collected by RHR in connection with that assessment have nothing to do with McHugh or the Bank's decision to promote Spence in 2020.

*Third*, McHugh claims that he needs the work papers from Spence's assessment "for purposes of verifying the accuracy of such an assessment . . . ." (Pl's Memo at 9) is not availing here. There is no reason to believe that the RHR Report contains any inaccuracies, much less any

inaccuracy that would have any bearing on McHugh's claim for age discrimination, nor has McHugh made any such allegation. This is no more than a fishing expedition, and "[t]he Seventh Circuit has made clear that discovery is not to be used as a fishing expedition to see what may turn up." *Autotech Techs, Ltd. P'ship v. Automationdirect.com, Inc.*, No. 05 C 5488, 2007 WL 2746654, at *4 (N.D. Ill. Sept. 18, 2007) (citing *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996)).

This argument also misconstrues the type of information that is probative of an age discrimination claim. In adjudicating McHugh's claim, the Court will not play "Monday morning quarterback" to the Board's business decision to promote Spence absent evidence of discriminatory intent. *See McQueen v. Barr*, 782 Fed. App'x. 459, 463 (6th Cir. 2019) ("In conducting a comparison of the candidates' qualifications, [courts] do not substitute [their] judgment for that of management. Instead, [courts] 'simply compare characteristics such as differences in job title, responsibilities, experience, and work record,' in order to make an informed determination regarding whether an employment decision was based on pretext.") (quoting *Hawkins v. Memphis Light Gas and Water*, 520 Fed. App'x 316, 320 (6th Cir. 2013)). None of the documents sought (RHR's work papers or Carmichael's 2015 assessment) speak to whether the Board's decision was based on discriminatory intent because, to the extent that the Board relied on RHR's findings, it could not rely on materials it never received from RHR or considered in 2020.

For each of these reasons, the documents sought from RHR are irrelevant, warranting the denial of the Motion.

**B.**    **The Materials Contain Private, Confidential Information Protected from Disclosure and Places an Undue Burden on RHR and Non-Parties**

Even if McHugh had met his burden in establishing the relevance of the documents he seeks from RHR (*see Ty, Inc.*, 1999 WL 162774 at *1), McHugh's need for the documents must be balanced against the danger of unfair prejudice, confusion of the issues, and wasting time,[13] among other concerns. Fed. R. Evid. 403. The materials sought in the subpoenas—those that have not already been produced by Fifth Third—are comprised of personal, private information which should be protected from disclosure and the Motion should be denied for this additional reason. *See* FED. R. CIV. P. 45 at Adv. Comm. Notes to 1991 Amend. (Rule 45(c)(3)(B)(i) authorizes federal courts to quash subpoenas because Rule 45 is intended "to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information").

McHugh's demands infringe upon the privacy rights of the individuals involved. RHR's Privacy Policy expressly states that information provided to RHR in connection with questionnaires and assessments will only be used for specific, legitimate purposes (*e.g.*, providing services, supporting clients, improving its website, and conducting assessments) and that RHR will not disclose responses to anyone other than those authorized in the Privacy Policy (*e.g.*, "The client with whom we share your responses may be your employer or prospective employer. Except with respect to the provision of consulting and advisory service, the information you provide will not

---

[13] Even if RHR were required to produce its notes from interviews with third parties, Rule 801 of the Federal Rules of Evidence would render any such documents inadmissible, as they constitute double hearsay (*e.g.*, RHR's written statement regarding what it was told about Spence by an employee of Fifth Third). *See White v. Ohio*, 2 Fed. App'x 453, 459 (6th Cir. 2001) (co-worker's testimony that supervisor had told her of comment he had overhead from another supervisor was inadmissible).

be sold or rented to third parties."). [14] These promises of confidentiality, and, in the case of employees other than Spence, anonymity (*see* Group Ex. 7; *see also* Exs. 4, 6), are legally binding on RHR. *See F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015). Spence's direct reports had a right to rely on these representations when providing fulsome, honest feedback about their boss.

Consistent with these obligations, Illinois statutes protect against the disclosure of an employee's sensitive personal information to other employees. The Illinois Personal Record Review Act entitles an employee to inspect, copy, and receive documents used in determining an employee's "qualifications for employment, promotion . . . compensation, [and] benefits." 820 ILCS 40/2(a). However, the statute expressly exempts from disclosure "[i]nformation of a personal nature about a person other than the employee if disclosure of the information would constitute a clearly unwarranted invasion of the other person's privacy." 820 ILCS 40/10(d). Further, the Act prohibits an employee from inspecting *his own* records if they fall into certain categories, including "portion[s] of a test document, except that the employee may see a cumulative total test score for either a section of or the entire test document" and "information of a personal nature about a person other than the employee if disclosure of the information would constitute a clearly unwarranted invasion of the other person's privacy." 820 ILCS 40/10(b),(d). Under this Act, *even Spence* could not require the disclosure of the sort of the information that McHugh is seeking here. McHugh should not have greater rights to access this information than Spence does, nor should he be allowed to circumvent such limitations through a subpoena.

---

[14] *Privacy Policy*, RHR INTERNATIONAL LLP, www.rhrinternational.com/privacy-policy/ (last visited April 14, 2025).

Further, RHR's notes and data are also protected by the therapist-patient privilege recognized in *Jaffee v. Redmond*, 518 U.S. 1, 15-17 (1996). In *Jaffee*, the Court held that conversations that took place between a Village of Hoffman Estates police officer and a clinical social worker employed by the Village, as well as the notes from these sessions, were protected from disclosure. *Id.* In so holding, the Court observed that Rule 501 of the Federal Rules of Evidence "authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience" (*id.* at 8), and concluded that "a privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence . . . .'" *Id.* at 9-10 (quoting *Trammel v. U.S.*, 445 U.S. 40, 51 (1990)). In reaching this conclusion, the Court observed that all 50 States and the District of Columbia have enacted laws recognizing a psychotherapist privilege. *Id.* at 12.

Here, McHugh is seeking private information of individuals that RHR *did not share* with Fifth Third. In order to protect the confidentiality of the interviewees and the integrity of RHR's assessment, RHR does not provide the information sought by McHugh to its clients. In fact, the agreement between Fifth Third and RHR explicitly contemplated that there would be information that RHR could not share with Fifth Third "as a matter of law or professional responsibility." *See* Ex. 10 at ¶ 5 ("The Company acknowledges that RHR may not, as a matter of law or professional responsibility, be able to disclose certain Personal Information to the Company. RHR shall not be obligated to provide such information to the Company or include such information in any Deliverable."). In contrast, the materials that *were* shared with Fifth Third (and subsequently produced to McHugh) contain only RHR's findings based on aggregated data relating to the leadership style and capabilities of Spence, and not any other employee's private information.

Neither Spence nor the other Fifth Third employees interviewed are parties to this litigation or accused of any wrongdoing. The assessment performed by RHR depends on candid disclosures from Spence, his coworkers, and his direct reports. McHugh has not provided any justification for the disclosure of the sensitive third-party information gathered by RHR that was not even shared with Fifth Third. Revealing these statements, made in confidence and in reliance of representations of their confidentiality, would be harmful and toxic to the workplace. The harm that could result to these individuals renders McHugh's requests disproportionate to the needs of the case. *See* FED. RULE CIV. P. 45(d)(3)(B)(i). McHugh's Motion should be denied.

## V.   CONCLUSION

McHugh has not established the relevance of the materials he seeks, and should not be allowed to access highly sensitive information irrelevant to his claims. Moreover, he has not shown that any probative interest these materials might provide outweigh the interests of non-parties in nondisclosure or the burden that disclosure of this information would place on them and RHR.

Pursuant to Rule 37(a)(5)(B), RHR respectfully requests an order from the Court directing McHugh to pay the expenses incurred by RHR in responding to his Motion. The Motion is groundless, and RHR has been required to expend substantial resources and expenses in responding to two separate motions to compel. An order requiring McHugh to pay RHR's reasonable attorneys' fees is appropriate under the circumstances of this case. *See Autotech Techs.*, 2007 WL 2746654 at *6 ("fee shifting encourages voluntary resolution of disputes and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claim").

For the foregoing reasons, RHR International LLP respectfully requests that the Court deny McHugh's Motion to Compel, award RHR International LLP the attorneys' fees and costs incurred in responding to the Motion, and for any additional relief the Court deem just and proper.

Dated: April 15, 2025

Respectfully submitted,

By: */s/ Nicole C. Mueller*
Nicole C. Mueller
nicole.mueller@klgates.com
Christopher A. Bloom
christopher.bloom@klgates.com
**K&L Gates, LLP**
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: (312) 372-1121
Fax: (312) 827-8000

*Attorneys for Respondent*
*RHR INTERNATIONAL LLP*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court via the Court's CM/ECF system on April 15, 2025, which will serve all counsel of record.

By:    */s/Nicole C. Mueller*
            Nicole C. Mueller

# EXHIBIT 1
# FILED UNDER SEAL

**EXHIBIT 2**
**FILED UNDER SEAL**

**EXHIBIT 3**
**FILED UNDER SEAL**

**EXHIBIT 4**
**FILED UNDER SEAL**

**EXHIBIT 5**
**FILED UNDER SEAL**

**EXHIBIT 6**
**FILED UNDER SEAL**

**EXHIBIT 7**
**FILED UNDER SEAL**

**EXHIBIT 8
FILED UNDER SEAL**

**EXHIBIT 9**
**FILED UNDER SEAL**



**EXHIBIT 10**

# Contract No. 62610

## RHR International LLP
## BUSINESS TERMS

RHR International LLP ("RHR") shall provide business consulting services to Fifth Third Bank (the "Company") on the following terms and conditions:

1.  Services.  RHR shall provide services, including specified Deliverables, as requested by the Company and agreed to by RHR to assist the Company (the "Services"). RHR shall be responsible for the Services and Deliverables only to the extent expressly agreed to between the Company and RHR.

2.  Confidentiality.  In connection with the Services, RHR and the Company each shall have access to confidential business information made available by the other.  Each party shall protect such confidential business information in the same manner as it protects its own confidential business information of like kind, and shall not disclose or use such confidential business information, except to the extent reasonably required for the performance of the Services; provided, however, that these provisions shall not apply to: (i) information previously known to the receiving party; (ii) information which is or has become available to the public in general through no fault of or breach of an agreement by the receiving party; (iii) information received from a third party not subject to any confidentiality obligations; or (iv) information which is independently developed by the receiving party. Confidential information contained in Deliverables may not be disclosed except in compliance with applicable laws, regulations and industry or professional standards.

3.  Deliverables.  Upon payment of all amounts due for the Services, the Company shall have the right to use the Deliverables in connection with its business consistent with the intended purpose of the Services.  Any proprietary information contained in the Deliverables that is owned by the Company shall remain owned solely and exclusively by the Company.    To the extent the Services and Deliverables to the Company contain RHR's proprietary information, including report formats and templates used to convey the Deliverables, upon payment of all amounts due for the Services, RHR grants the Company a non-exclusive, non-assignable license to use such proprietary information within the Company for such purposes.  Any other use or use other than by the Company of the Deliverables shall require RHR's express, prior written consent.  Any Deliverable including an assessment of an individual may not be used more than three (3) years after delivery without RHR's express written permission. Use of any other Deliverable is subject to any shelf life restriction stated in the Deliverable.

Subject to the foregoing, the Company acknowledges that RHR shall own all right, title and interest to all of RHR's business and consulting methodologies, business methods, concepts, know-how, analytical frameworks, work papers, report formats and templates, databases, analytical approaches and information, whether developed before, during the term of these Services or thereafter, including any copyrights, patent and other intellectual property rights with respect to anything that RHR may discover, create or develop during RHR's provision of the Services to Company.

4.  Nature of Services.  The Services provided by RHR and RHR Consultants are to be provided to and for the benefit of the Company.  Any advice, recommendations or Deliverables provided to the Company by RHR is for the sole benefit and use of the Company and may not be relied upon or used by any third party.  Company acknowledges that any advice or recommendations provided to Company by RHR in connection with this engagement are based on the information available to RHR at the time.  Decisions based upon such advice or recommendations are matters in the sole discretion of the Company.  The outcome of such decisions is based upon many factors and RHR does not guarantee any specific result or outcome.  In connection with its Services, RHR Consultants may administer to Company Personnel certain psychometric preference and other questionnaires, tests and instruments, which shall be used solely to assist RHR in providing advice for the benefit of the Company. RHR does not provide direct psychological or counseling services to any individual, including Company Personnel.

5.   Personal Information and Disclosure of Certain Information.  In connection with the provision of Services, RHR, its affiliates and contractors may receive information concerning Company Personnel, including personal data about individuals ("Personal Information").   Certain information may be covered by the European Data Protection Directive and other applicable laws and the Company consents to the transfer of such information to countries outside of the European Economic Area ("EEA"), including to offices of RHR its affiliates and contractors as well as offices of the Company and its affiliates located outside of the EEA.  The Company shall comply with the European Data Protection Directive and other applicable laws with respect to such information, including respecting and maintaining the confidentiality and security of the Personal Information. The Company further acknowledges that RHR may not, as a matter of law or professional responsibility, be able to disclose certain Personal Information to the Company.  RHR shall not be obligated to provide such information to the Company or include such information in any Deliverable.  RHR may engage contractors for the purpose of processing certain of the data that is collected.  Provided information is aggregated and does not identify a named individual or the Company, the Company consents to the use by RHR of any information obtained by RHR in connection with its Services in the ordinary course of its business and for research and statistical purposes, as long as such data is not attributed to a named individual or the Company.

6. Fees and Payment. The Company shall be responsible for reasonable out-of-pocket expenses of RHR as well as for all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the Services, excluding taxes on RHR's income generally. Fees for Services not originally agreed to shall be in accordance with RHR's regular rates. RHR shall bill the Company at the completion of each activity or monthly, whichever is sooner. Payment is due upon receipt of the invoice. Invoices more than 30 days overdue will incur interest at rate of 1% interest per month.

RHR's fees shall be based on the cooperation of the Company with RHR and RHR Consultants. If the Company cancels a meeting within less than 48 hours written or oral notice, RHR reserves the right to charge for the additional time of its RHR Consultant at regular rates. The Company also acknowledges that the Company's delay in delivering information to RHR may affect the delivery time of the Services. RHR reserves the right to decline additional work if information is not provided by the Company in a timely manner and to suspend Services altogether if the practice persists.

7. Staffing. RHR is committed to providing competent RHR Consultants to perform the Services. If the Company requests specific individuals, RHR shall endeavor to honor such requests, however the decision with respect to the assignment of any individual RHR Consultant shall remain with RHR. If RHR reassigns any RHR Consultant who is providing Services, RHR shall inform the Company and endeavor to mitigate the impact of such reassignment.

The Company shall not employ or solicit the employment of any RHR Consultant who performed any Services while such Services are being provided and for a period of three (3) years thereafter. In addition to any other remedies, in the event the Company hires an RHR Consultant who performed such Services, the Company shall pay RHR as liquidated damages an amount equal to the total compensation for the one-year period immediately preceding the hiring of such RHR Consultant.

8. Subcontractors. To the extent RHR in its discretion engages any subcontractor in connection with the Services, RHR shall be responsible for the Services provided by and payment due to such subcontractors. RHR shall require that any subcontractor shall maintain all Company information confidential on terms no less restrictive than the confidentiality provisions set forth in these Business Terms.

9. Terms of Use. In connection with the provision of Services, RHR may provide the Company with access to specific analytic tools and systems, including proprietary software, databases, tracking systems, and websites, which are governed by separate or additional terms of use. The Company shall comply with any applicable terms of use and restrictions.

10. Warranty. RHR warrants that the Services shall be performed with reasonable care in a diligent and competent manner. RHR's sole obligation shall be to correct any non-conformance with this warranty or, at RHR's election refund the fees paid for the applicable Services, provided that the Company provides notice within sixty (60) days after such Services are performed or, with respect to a Deliverable, within sixty (60) days after Company receipt of the Deliverable. The notice shall specify and detail the non-conformance and, if the parties agree that a non-conformance exists, RHR shall have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance. In the event Company does not provide such notice within the sixty (60) day period, any claim with respect to such non-conformance shall be deemed waived. In the event RHR is asked to re-perform any work and it is subsequently determined that RHR has already met its obligations under these Business Terms, the Company shall pay RHR on a time and materials basis at RHR's regular rates for time spent on such additional work.

THE UNDERTAKING IN THIS PARAGRAPH IS RHR'S ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLES, AND IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

11. Indemnification. RHR shall indemnify, defend and hold the Company, its employees and agents harmless from and against any claims, suits or causes of action (including reasonable attorneys' fees) arising out of the negligent or willful acts of RHR in connection with the performance of the Services or infringement by RHR of any third party's intellectual property by any Deliverable provided under this Agreement. The foregoing indemnification will not apply to the extent any infringement results from: (i) the use of the Deliverables other than in accordance with the terms of this Agreement and any applicable documentation or instructions supplied by RHR; (ii) any modification to the Deliverables not expressly agreed to in writing by RHR; or (iii) the combination of the Deliverables with any materials not provided or expressly approved by RHR.

The Company shall indemnify, defend and hold RHR, RHR Consultants, and RHR's employees and agents harmless from and against any claims, suits or causes of action (including reasonable attorneys' fees) arising out of Company's actions, including any use of any Deliverables, except to the extent such claim is covered by the preceding subparagraph.

If either party learns of an actual or potential claim for which it may seek indemnification under this Paragraph, it shall promptly notify the other party. The indemnifying party shall have the right to assume control over the defense of, settlement of, and selection of counsel for such claim or proceeding. The indemnified party shall cooperate with the indemnifying party, its insurers and its counsel in contesting any claim or proceeding. The indemnified party at its cost and expense may participate in, but not control, any such defense. Except for a settlement involving only a cash payment, the indemnifying party shall not agree to any settlement of any claim or suit without the prior written approval of the indemnified party, which approval shall not be unreasonably withheld.

12. Limitations on Liability. EXCEPT WITH RESPECT TO THE INDEMNITIES IN PARAGRAPH 11, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INDIRECT, SPECIAL, INCIDENTAL OR SIMILAR DAMAGES. RHR's aggregate maximum liability relating to the Services under these Business Terms (regardless of form of action, whether in contract, negligence or otherwise) shall be limited to the compensation paid to RHR for Services in the 12-month period immediately preceding the event giving rise to liability.

13. Termination. (a) Either party may, upon giving not less than thirty (30) days prior notice to the other, terminate Services.

(b) RHR may at its option suspend Services or terminate Services immediately upon notice in the event the Company fails to pay any payments due to RHR within the prescribed period of time.

(c) In the event of termination of Services, RHR shall take all reasonable efforts to properly transition the client relationship to another service provider. The Company shall pay RHR for all Services rendered, expenses incurred or commitments made by RHR prior to the date of termination, and shall reimburse RHR for all reasonable costs associated with any termination.

(d) Either party may upon notice terminate these Business Terms provided such termination shall not be effective with respect to any agreement to provide Services entered into prior to such notice.

14. Miscellaneous.

(a) All notices, demands, or other communications given or made under these Business Terms shall be in writing, unless noted otherwise, and shall be effective: (i) upon delivery if delivered in person; (ii) five (5) business days after deposit in the regular mail, addressed to the recipient, postage prepaid and registered or certified with return receipt requested; (iii) one (1) business day after deposit with an express mail or overnight courier service, provided that confirmation of such delivery is received; and (iv) if given or made by fax, when dispatched subject to receipt of a machine-printed confirmation of error-free dispatch, and upon transmission if sent via electronic mail, provided that a confirmation copy is sent via express mail or overnight courier service and confirmation of such delivery is received. Such notices, demands, or other communications shall be sent to each party at the mailing addresses or facsimile numbers indicated below. Any party may change its address or other notice information by providing the other party with notice in accordance with this Paragraph.

(b) The relationship between the parties is that of independent contractors, and nothing in these Business Terms is intended to, or should be construed to, create a partnership, agency, joint venture or employment relationship. Neither party is authorized to make any representations, contracts or commitment on behalf of the other. RHR assumes full and sole responsibility for the payment of all compensation and expenses (including payment of employment benefits, if any) of RHR Consultants, including workers' compensation, disability benefits and unemployment insurance, and for withholding and remitting any local, state or federal payroll-related taxes or assessments related to performance of the Services. RHR may identify Company as a client and include a general description of the services provided by RHR to Company (e.g., Chair Succession) in RHR's client lists, marketing presentations and promotional materials, provided that RHR does not reveal specific details about, or the participants of the engagement.

(c) No rights, benefits, or claims are conferred upon any person or entity not a party to these Business Terms or any agreement between RHR and the Company to provide Services. In the event the Company chooses to directly engage other contractors, RHR shall not be responsible for the performance of such contractors, even if RHR has been involved in recommending or selecting such contractors or in otherwise reviewing such third party's work.

(d) If RHR is the subject of a subpoena or is requested to testify or otherwise becomes similarly involved (other than as a party) in any legal proceeding which arises out of or relates to RHR's performance of Services pursuant to these Business Terms, the Company agrees to reimburse RHR for all costs incurred by RHR (including attorneys' fees and the time of RHR Consultants at regular rates) in connection with such proceeding.

(e) Neither party shall be liable or responsible by reason of any failure or delay in the performance of its obligations (except for the payment of money) on account of strikes, shortages, riots, insurrection, fires, flood, storm, explosions, acts of God, war, governmental action, labor conditions, earthquakes, or any other cause which is beyond the reasonable control of such party.

(f) The parties may correspond or convey documentation via electronic mail, which has inherent limitations, including issues of performance, reliability, availability and security. Neither party shall be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any electronic mail due to any reason beyond that party's reasonable control.

(g) Each party acknowledges that breach of these Business Terms by the other party may result in irreparable harm, the extent of which would be difficult or impracticable to assess, and that money damages would not be an adequate remedy for such breach. Accordingly, either party shall be entitled to seek immediate injunctive and other provisional relief with respect to such breach without prejudice to any such other remedies.

(h) These Business Terms and any agreement between RHR and the Company to provide Services shall be governed in all respects by the laws of the State of Illinois without regard to conflicts of laws rules.

(i) Each party consents to the jurisdiction of the relevant court of Illinois for any legal action, suit, or proceeding arising under or relating to these Business Terms or any agreement between RHR and the Company to provide Services and agrees that any such action, suit, or

3

proceeding may be brought only in such courts. Each party further waives any objection to the laying of venue for any such suit, action, or proceeding in such courts or for the purpose of enforcing any such decisions or rulings.

(j)   The Paragraph headings in these Business Terms are provided for convenience only and shall not affect its construction or interpretation.   All references to "Paragraph" or "Paragraphs" refer to the corresponding Paragraph or Paragraphs of these Business Terms. Whenever the context may require, any pronoun includes the corresponding masculine, feminine and neuter forms. Words in the singular or plural include the plural or the singular, as the case may be.   The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".   Unless otherwise expressly stated in any written agreement between RHR and the Company to provide Services, these Business Terms shall be deemed incorporated into and made a part of any agreement between RHR and the Company.   In the event of any conflict between the terms set forth in any agreement between RHR and the Company to provide Services and these Business Terms, these Business Terms shall control.   The following capitalized terms shall have the following meanings:

"Company Personnel" shall mean any employee, prospective employee or agent of the Company.

 "Deliverables" shall mean any written report, analysis or other tangible embodiment of advice that RHR delivers to the Company.

"RHR Consultant" shall mean any consultant, employee, agent or contractor of RHR.

(k)   If any court of competent jurisdiction shall hold any part of these Business Terms or any agreement between RHR and the Company to provide Services invalid or unenforceable, the other provisions of these Business Terms or any such agreement shall remain in full force and effect.   Any provision of these Business Terms or any such agreement held invalid or unenforceable only in part or

degree shall remain in full force and effect to the extent not held invalid or unenforceable.

(l)   The rights and remedies of the parties are cumulative and not alternative.   Neither the failure nor delay by any party in exercising any right, power, or privilege, and no single or partial exercise of any such power, right, or privilege shall preclude any other or further exercise of such or any other power, right or privilege.   Any waiver or consent shall be in writing signed by the party granting such waiver or consent.

(m)   These Business Terms or any agreement between RHR and the Company to provide Services may not be assigned   or   transferred   (including   any   transfer   by operation of law) by either party without the written consent of the other party.

(n)   These Business Terms and any agreement between RHR and the Company to provide Services shall be binding upon and shall inure to the benefit of the parties, their affiliates, and their respective successors and permitted assigns.

(o)   The rights and obligations that by their nature should survive or extend beyond the termination or expiration of these Business Terms or any agreement between RHR and the Company to provide Services shall survive any termination or expiration of these Business Terms or such agreement.

(p)   These   Business   Terms   supersede   all   prior   and contemporaneous   communications,   proposals   or agreements between the parties, oral or written.   No changes, amendments or modifications of these Business Terms are valid or binding upon the parties unless made in writing and manually signed by a duly authorized representative of each party.

(q)   These Business Terms may be executed in one or more counterparts, each of which shall be deemed to be an original copy of these Business Terms and all of which, when taken together, shall be deemed to constitute one and the same agreement.

IN WITNESS WHEREOF, the parties to these Business Terms have caused these Business Terms to be signed and sealed on the date last indicated below.

**RHR:**

**RHR International LLP**

_____
Signature

Robert L. Pierce, Senior Partner, CFO
Print/Type Name and Title of Signatory

Dated: _02/25/2016_____

Attention: Chief Financial Officer

**The Company:**

**Fifth Third Bank**

_____
Signature

Teresa J. Tanner
Print/Type Name and Title of Signatory

Dated:   02/24/2016_____

Attention: _____
Address:   _____
          _____

4

# EXHIBIT 11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

Philip R. McHugh,

      Plaintiff,                       Case No. 1:21-cv-00238

            v.                       Judge Michael R. Barrett

Fifth Third Bancorp., et al.,

      Defendants.

**ORDER[1]**

    This matter is before the Court on Plaintiff's Motion to Compel Production of Documents Subpoenaed from Non-Party RHR International, LTD[2] (Doc. 40), RHR's response in opposition (Doc. 59), and Plaintiff's reply (Doc. 61). Also before the Court is RHR's Motion for Leave to File a Sur-Reply (to Plaintiff's reply (Doc. 61)) (Docs. 62, 63), Plaintiff's response in opposition (Doc. 64), and RHR's reply (Doc. 65).

    **Background.** Plaintiff served RHR (in Chicago, Illinois) with two subpoenas issued from the Southern District of Ohio. *See* Fed. R. Civ. P. 45(a)(2) ("A subpoena must issue from the court where the action is pending."). The first, served on April 1, 2022, seeks 15 categories of documents that "relate[ ] to executive assessments performed on [Timothy] Spence, [Philip] McHugh, and any other candidates for the

---

[1] Plaintiff Philip R. McHugh has sued Defendants Fifth Third Bancorp, Fifth Third Bank, N.A., and Gregory D. Carmichael (collectively, "Defendants") for violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., as well as Ohio Rev. Code § 4112. (Doc. 9). His six-count Amended Complaint includes federal and state law claims for failure to promote, wrongful termination, and retaliation. (*Id.* ¶¶ 39–67). Defendants have filed a counterclaim (Doc. 10 PAGEID 1809–16) for abuse of process under state common law (*id.* ¶¶ 31–41).

[2] RHR "is a consulting firm composed of behavioral scientists and practitioners. RHR applies behavioral science to organizations to make those organizations, and the individuals who work there, more effective. In 2020, Fifth Third Bank engaged RHR to assess Timothy Spence for the role of President and Chief Executive Officer. RHR did not assess any other candidate, including McHugh. After completing its assessment of Spence, RHR reported its findings to the Board of Directors of Fifth Third Bank." (Doc. 59 PAGEID 2517).

1

position of President or CEO of Fifth Third [Bank] between January 1, 2016 to the present." (Doc. 40 PAGEID 2367). The second, served on April 21, 2023 and after initial director and bank employee depositions, seeks additional documents "specific to RHR's executive assessment work relating to Fifth Third[.]" (*Id.* PAGEID 2368). Both subpoenas command that the documents be produced by either mail or email to Plaintiff's counsel in Cincinnati, Ohio.

**Law & Analysis.** Plaintiff maintains that the documents subpoenaed from RHR regarding its assessment of Timothy Spence at Fifth Third's request are "clearly relevant" to the litigation. Plaintiff further maintains that RHR's "blanket objections" are meritless.

Rule 45 governs non-party subpoenas. Two questions are presented here: one concerning RHR's place of production and, the other, RHR's place of compliance.

"A subpoena may command[ ] **production** of documents, electronically stored information, or tangible things **at a place within 100 miles** of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(2)(A) (emphasis added). Plaintiff does not dispute that RHR's headquarters, along with the keeper of its records, are in Chicago, which is more than 100 miles from Cincinnati. Plaintiff argues, however, that the 100-mile limit doesn't apply when the subpoenas seek *electronic* production of documents, such that no personal appearance is required. *See Atlas Indus. Contractors LLC v. In2Gro Tech. LLC*, No. 2:19-cv-1815718, 2020 WL 1815718, at *2 (S.D. Ohio Apr. 10, 2020); *see also Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-cv-0722, 2020 WL 12968432, at *4 (M.D. Tenn. Apr. 23, 2020) (citing *United States v. Brown*, 223 F. Supp. 3d 697, 703 (N.D. Ohio 2016)). Because RHR can either mail or email the documents subpoenaed from its headquarters, its place of production is Chicago.

RHR disagrees with this construction.[3] RHR also points out that Plaintiff's motion

---

[3] *See* Fed. R. Civ. P. 45(d)(2)(B) (A person commanded to produce documents "may serve on the party

2

to compel was not filed in the correct district. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) (Once an objection is made, "the serving party may move **the court for the district where compliance is required** for an order compelling production[.]") (emphasis added). According to RHR, the district "where compliance is required" is Chicago, which is located within the Northern District of Illinois, Eastern Division. Plaintiff, on the other hand, contends that the place of compliance is Cincinnati, as noted on the face of the subpoenas.

"Under the federal rules, as amended in 2013, a subpoena must be issued by the court where the underlying action is pending, but **challenges to the subpoena are to be heard by the district court encompassing the place where compliance with the subpoena is required**." *Europlay Capital Advisory, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Calif. 2018) (cleaned up) (emphasis added); *see Thacker v. Ethicon, Inc.*, 572 F. Supp. 3d 319, 322 (E.D. Ky. 2021) (citing *Europlay*); *Whiteamire Clinic, P.A. Inc. v. Cartridge World N. Am., LLC*, No. 1:16CV226, 2021 WL 9124591, at *2 (N.D. Ohio Oct. 27, 2021).[4]

"The meaning of the phrase 'the court for the district where compliance is required' is ambiguous and has been interpreted differently." *Henry Schein, Inc. v. Drea*, No. 4:21-

---

or attorney designated in the subpoena a written objection[.]").

[4] In *Atlas Indus.*, Magistrate Judge Vascura, seated in the Southern District of Ohio, Eastern Division, highlights this requirement:

> **Neither the parties nor [non-party] Plugout raise the related issue of the proper forum for this motion seeking compliance with a subpoena.** Federal Rule of Civil Procedure 45(d)(2)(B)(i) states that such a motion should be filed with "the court for the district where compliance is required." Because Plugout's compliance would occur in New Jersey [at its primary place of business], Rule 45 directs that I2G should have filed its motion with the United States District Court for the District of New Jersey. However, as this issue was not raised in any of the briefing, the undersigned proceeds to consider I2G's motion.

2020 WL 1815718, at *2 n.3 (citation omitted) (emphasis added). Although dicta in that case, non-party RHR obviously has raised the "related" issue here.

cv-00192-RGE-HCA, 2022 WL 18584628, at *2–3 (S.D. Iowa May 31, 2022) (quoting *Merch. Consulting Grp., Inc. v. Beckpat, LLC*, No. CV 17-11405-PBS, 2018 WL 4510269, at *2 (D. Mass. July 11, 2018)). "[Some] courts look to the face of the subpoena to see where compliance is required. Other courts reason that because Rule 45 notes that the place of compliance must be 'within 100 miles of where the person resides, is employed, or regularly transacts business in person', they have concluded that the place of compliance is located where the subpoenaed party lives or works." *Id.* (citations omitted). The parties have cited no Sixth Circuit authority on this issue and the Court's research has found none.

Having considered both views, the undersigned finds the "better approach" is to tie the place of compliance to the location of the subpoenaed entity. *See Raap v. Brier & Thorn, Inc.*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017) (one purpose behind Rule 45 was to protect nonparties from having to adjudicate a dispute over a subpoena in a distant forum) (citing Fed. R. Civ. P. 45, Advisory Committee Notes, 2013 Amendment (pertaining to Subdivision (f)); *HI.Q, Inc. v. ZeetoGroup, LLC*, No. 22cv1440-LL-MDD. 2022 WL 17345784, at *7–8 (S.D. Calif. Nov. 29, 2022) (citing *Raap* & collecting other cases); *Ortiz v. Harrell*, No. 21-14219-CIV, 2022 WL 457856, at 3–4 (S.D. Fla. Feb. 14, 2022) ("For non-party corporations, courts find that 'the place of compliance' is where a corporation is headquartered."); *Dou v. Carillon Tower/Chicago LP*, No. 18 CV 7865, 2020 WL 5502345, at *1–2 (N.D. Ill. Sept. 11, 2020 (citing *Raap*, "In 2013 Rule 45 was amended, in part to protect subpoena recipients. . . . To require . . . non-parties to litigate disputes in a distant forum[ ] would defeat the amended rule's protective purpose."). As one district court has recently—and thoughtfully—explained:

> In the decade since the current rules were enacted, a recurring scenario has arisen that has befuddled attorneys and split courts: determining the place of compliance for filing a motion to quash a

subpoena that on its face requires production of documents in a location (in this case, Nevada) that the subpoenaed nonparty argues is improper because the nonparty is located elsewhere (in this case, New Hampshire). Some courts have interpreted the place "where compliance is required" for purposes of filing a motion to quash to mean the location identified on the disputed subpoena for the document production, regardless of whether that place is not the location of the subpoenaed nonparty. *See, e.g.*, *Pizana v. Basic Research, LLC, No.* 1:18-cv-00644-DAD-SKO, 2022 WL 1693317, at *2 (E.D. Cal. May 26, 2022) (collecting cases). These courts have reasoned that such a rule provides an easy answer to the issue and eliminates the need for intensive fact-finding as to this threshold issue, and that the place of compliance is technically the location identified on the subpoena unless and until the court determines otherwise. *See, e.g.*, *CSS, Inc. v. Herrington,* 354 F. Supp. 3d 702, 710 (N.D. Tex. 2017).

**Other courts have interpreted the place "where compliance is required"** for a motion to quash a subpoena for the production of documents **to mean the location of the subpoenaed nonparty, even if different than the location for the production of documents identified on the face of the subpoena.** *See HI.Q, Inc. v. ZeetoGroup, LLC*, No. 22cv1440-LL-MDD, 2022 WL 17345784, at *7 (S.D. Cal. Nov. 29, 2022) (collecting cases); *see also Europlay Capital Advisors*, 323 F.R.D. at 629. **These courts have reasoned that such an approach is consistent with the overall framework of the rule, which is designed to ensure local resolution of subpoena disputes as a means to protect the subpoenaed nonparty, a purpose that would be thwarted by requiring subpoenaed nonparties to adjudicate a subpoena-related dispute in a distant forum based solely on the face of the subpoena.** *See, e.g.*, *Raap v. Brier & Thorn, Inc*, No. 17-MC-3001, 2017 WL 2462823, at *3 (C.D. Ill. July 7, 2017). This Court has already ruled elsewhere that the place of compliance for purposes of filing a motion to quash a subpoena must be tethered to the location of the subpoenaed person. *See 4R4 Sons[, LLC v. Tru G. Wilhelm, Inc.*, No. 2:21-cv-01081-GMN-NJK], 2022 WL 2905468, at *4 [D. Nev. July 22, 2022]; *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-cv-0708-RFB-NJK, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014); *see also Lavoie v. Hyundai Motor Am.*, No. 2:22-cv-00628-GMN-VCF, 2022 WL 10632400, at *1–2 (D. Nev. Oct. 18, 2022) ;*GBT Techs., Inc. v. Jackson*, No. 2:20-cv-02078-APG-VCF, 2021 WL 2418555, at *2 (D. Nev. June 14, 2021). The Court will continue to take that approach here.

Under the heading "Place of Compliance," Rule 45(c) requires that document production via subpoena must occur within 100 miles of the location of the subpoenaed nonparty. *See* Fed. R. Civ. P. 45(c)(2)(a); *see also In re Outlaw Labs, LP Litig.*, No. 18cv840 GPC, 2020 WL 5709386, at *2 S.D. Cal. Sept. 24, 2020 ("Rule 45(c)(2)(A) *defines* where compliance is required for production of documents or electronically stored information" (emphasis added)). The drafters of the current version of Rule 45 plainly intended this provision to not just be a basis to quash a non-compliant subpoena, but to also serve as the touchstone for determining which court should decide that motion to quash:

> To protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) [requiring that the place of compliance be tethered to the location of the subpoenaed nonparty] and the requirements in Rules 45(d) and (e) that motions be made in the court in which **compliance is required under Rule 45(c)**.

Fed. R. Civ. P. 45(f), Advisory Committee Notes (2013) (emphasis added). **Hence, the intent could not be clearer that the location of the subpoenaed nonparty, as identified in Rule 45(c), is meant to control which district is the place of compliance** for the purpose of filing a motion to quash under Rule 45(d). While advisory committee notes are not necessarily the final answer in interpreting the text of the rules, they are an important tool in doing so. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (while views expressed by the advisory committee are "not determinative" of a rule's meaning, they are "of weight" in the judicial construction of the text of the rule); *see also United States v. Vonn*, 535 U.S. 55, 64 n.6, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) (explaining that the Advisory Committee Notes can "provide a reliable source of insight into the meaning of a rule"). **With respect to the place for resolving subpoena-related disputes, it would eviscerate the entire purpose of these provisions in Rule 45 to interpret them as meaning that a subpoenaing party may force a subpoenaed nonparty to litigate a subpoena-related dispute in an inconvenient district by simply listing that location on the face of the subpoena.** *Raap*, 2017 WL 2462823, at *3.

*York Holding, Ltd. v. Waid*, 345 F.R.D. 626, 628–629 (D. Nev. 2024) (footnotes omitted) (emphasis added). True, York Holding involved a motion to quash filed by the subpoenaed party (under Rule 45(d)(3)(A)) versus the circumstance here, where the

subpoenaing party has filed a motion to compel (under Rule 45(d)(2)(B)(i)).  No matter, because the phrase "the district where compliance is required" appears (identically) in both subsections.

In sum, the Court determines that the place of compliance—for the purpose of filing a motion to compel a non-party to produce documents—is the place where that non-party is located.  In this case, that place is Chicago, Illinois, not Cincinnati, Ohio.  Accordingly, this Court lacks authority to rule on the merits of Plaintiff's motion.[5]

**Conclusion.**  Plaintiff's Motion to Compel Production of Documents Subpoenaed from RHR International, LTD. (Doc. 40) is **DENIED WITHOUT PREJUDICE**.  In turn, RHR's Motion for Leave to File a Sur-Reply in Response to Plaintiff's Reply in Support of his Motion to Compel (Doc. 62) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT

---

[5] This Court rejects labeling the "place of compliance" analysis as a jurisdictional question "because that issue focuses on a forum state's power and notice to a potential witness, whereas Rule 45 focuses on the burden to nonparties."  *HI.Q*, 2022 WL 17345784, at *7.  *See* Fed. R. Civ. P. 82 ("The[ federal] rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts.").